United States District Court
For the Northern District of California

1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   MITSUI O.S.K. LINES, LTD.,           )  Case No. 10-5586 SC
                                         )
8            Plaintiff,                  )  ORDER RE DEFENDANT UNION
                                         )  LOGISTICS, INC.'S MOTION
9        v.                              )  FOR SUMMARY JUDGMENT
                                         )
10  ALLIED TRANSPORT SYSTEM (USA),       )
11  INC.; CENTURION LOGISTICS            )
    MANAGEMENT; CENTURION LOGISTICS      )
12  SERVICES, LTD.; UNION LOGISTICS,     )
    INC.; and DOES 1 through 20,         )
13                                       )
                                         )
14           Defendants.                 )
    _____

15

16  **I.    INTRODUCTION**

17       In this action, Plaintiff Mitsui O.S.K. Lines, LTD.

18  ("Plaintiff" or "Mitsui") sues Defendants Allied Transport System

19  (USA), Inc., ("Allied"), Centurion Logistics Services, LTD.,

20  Centurion Logistics Management, and Union Logistics, Inc.

21  ("Union"), seeking to recover allegedly unpaid ocean freight

22  charges and fraudulent trucking charges.  ECF No. 35 ("SAC") ¶ 1.

23       Now before the Court is a Motion for Summary Judgment brought

24  by Union.  ECF No. 41 ("Mot.").  The Motion is fully briefed.  ECF

25  Nos. 46 ("Opp'n"), 48 ("Reply").  For the following reasons, the

26  Court DENIES Union's Motion with regard to Plaintiff's claims for

27  breach of contract, intentional misrepresentation, and negligent

28

1   misrepresentation and DEFERS ruling on Plaintiff's claim for

2   accounting.

3

4   **II.   BACKGROUND**

5        This case is still in its very early stages.  Mitsui first

6   named Union as a Defendant in its SAC, filed on July 21, 2011.

7   Union filed the instant Motion less than two months later on

8   September 9, 2011.  Other than initial disclosures, no discovery

9   has yet taken place between Union and Mitsui.

10       **A.   Undisputed Facts**

11       Mitsui, a Japanese corporation, is an ocean common carrier

12  that operates container ships moving cargo between the United

13  States and foreign ports.  SAC ¶ 3; ECF No. 44 ("Union Ans.") ¶ 3.

14  Mitsui transports cargo across oceans from port to port, and

15  sometimes also arranges for the cargo's transport to and from

16  inland locations on either end of the ocean voyage.  Mot. at 1.

17       Union is a non-vessel-operating common carrier ("NVOCC").

18  Union Ans. ¶ 4.  Allied is also a NVOCC and does business under the

19  trade name Centurion Logistics Management ("Centurion").  ECF No.

20  37 ("Allied Ans.") ¶ 4.[1]  A NVOCC is a company that customers hire

21  to ship cargo, but the NVOCC itself does not actually operate the

22  cargo-carrying vessels.  Instead, NVOCCs hire ocean common carriers

23  such as Mitsui to physically transport the cargo for their

24  customers.  Thus, a NVOCC is a "shipper" in its relationship with

25  _____

26  [1] Plaintiff alleges that Centurion Logistics Services, LTD. is an
    affiliate of Allied based in Hong Kong.  SAC ¶ 4.  Allied denies
27  this allegation.  Allied Ans. ¶ 4.  Centurion Logistics Services,
    LTD. has not entered an appearance in the case.  All references to
28  "Centurion" in this Order refer to Allied operating under its trade
    name Centurion Logistics Management.

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

1  an ocean common carrier.  See 46 U.S.C. § 40102(16) (defining

2  NVOCC).

3       At all times relevant to this case, Centurion and Mitsui were

4  parties to a series of "service contracts" in which Centurion

5  promised to provide a certain volume of cargo over a fixed time

6  period and Mitsui agreed to transport the cargo for a certain rate.

7  SAC ¶ 7; Allied Ans. ¶ 7; see also 46 U.S.C. § 40102(20) (defining

8  "service contracts" between shippers and ocean common carriers).

9  Pursuant to these contracts, Mitsui transported hundreds of

10 shipments from Centurion.  Minck Decl. ¶ 11.[2]  The bills of lading

11 for many of these shipments list Union as the "consignee" and

12 "notify party."  Union submitted seven examples of bills of lading

13 issued by Mitsui where Centurion is identified as the "shipper" and

14 Union is identified as the "consignee" and "notify party."  Kam

15 Decl.[3] Exs. A-G.[4]

16      **B.   Mitsui's Allegations**

17      Mitsui alleges that Defendants are jointly and severally

18 liable for unpaid freight charges for shipments dating from about

19 December 2008 to June 2010, in the amount of at least $918,348.60.

---

21 [2] Warrin Minck ("Minck"), Senior Internal Auditor for Mitsui's
22 general agent in the United States, submitted a declaration in
   support of the Opposition.  ECF No. 47 ("Minck Decl.").

23 [3] Joseph Kam ("Kam"), President of Union, filed a declaration in
   support of the Motion.  ECF No. 42.  ("Kam Decl.").  The original
24 declaration submitted was not signed.  John Daley ("Daley"),
   counsel for Union, submitted a declaration explaining that he filed
25 an unsigned version of the Kam Declaration in error and attaching
   the signed version.  ECF No. 49.

27 [4] Union declares that it was named as the consignee and notify
   party on "several" bills of lading, while Mitsui declares that
28 Union was so named on at least 970 bills of lading.  Kam Decl. ¶ 3;
   Minck Decl. ¶ 11.  Union does not dispute Mitsui's contention.

**United States District Court**
For the Northern District of California

1  SAC ¶ 10.  Mitsui further alleges that Defendants wrongfully

2  deprived Mitsui of revenue by participating in a scheme whereby

3  Mitsui was charged for trucking services that were not actually

4  rendered.  Id. ¶¶ 13-16.  Mitsui alleges that this scheme worked as

5  follows.  Defendants booked shipments with Mitsui for "door" pick-

6  up of cargo to be carried from inland areas of Guangdong Province

7  in South China to destinations in the United States.  Id. ¶ 13.

8  For each shipment so booked, Mitsui was required by its contracts

9  to pay the cost of trucking the shipments from the places of origin

10 -- thought to be factories or warehouses -- to the ports of

11 loading.  Id.  In auditing shipments booked by Defendants, Mitsui

12 allegedly discovered that the contracts of carriage between

13 Defendants and their cargo customers provided for the receipt of

14 the cargo directly at the ports of loading in China.  Id. ¶ 15.

15 Thus, Defendants' customers had to arrange and pay for trucking the

16 shipments from their point of origin to the port of loading.  Id.

17 No trucking services were actually provided on Mitsui's behalf, and

18 the shipments were delivered directly to the ports of loading at no

19 cost to Defendants.  Id.  Nevertheless, because Defendants booked

20 the shipments for "door" pickup, Mitsui was caused to pay for

21 trucking services that were never rendered on thousands of such

22 shipments.  Id. ¶ 16.

23    Mitsui's SAC, filed on July 21, 2011, asserts the following

24 claims: (1) breach of maritime contract, based on the allegedly

25 unpaid freight charges; (2) accounting, seeking an audit of

26 Defendants' records to determine the total amount of unpaid

27 charges; and both (3) intentional and (4) negligent

28 misrepresentation, based on the allegations that Defendants

1  misrepresented that shipments would be picked up at inland points

2  of origin.

3

4  **III. LEGAL STANDARD**

5      Entry of summary judgment is proper "if the movant shows that

6  there is no genuine dispute as to any material fact and the movant

7  is entitled to judgment as a matter of law." Fed. R. Civ. P.

8  56(a). Summary judgment should be granted if the evidence would

9  require a directed verdict for the moving party. Anderson v.

10  Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[]

11  mandates the entry of summary judgment . . . against a party who

12  fails to make a showing sufficient to establish the existence of an

13  element essential to that party's case, and on which that party

14  will bear the burden of proof at trial." Celotex Corp. v. Catrett,

15  477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be

16  believed, and all justifiable inferences are to be drawn in his

17  favor." Anderson, 477 U.S. at 255. However, "[t]he mere existence

18  of a scintilla of evidence in support of the plaintiff's position

19  will be insufficient; there must be evidence on which the jury

20  could reasonably find for the plaintiff." Id. at 252. "When

21  opposing parties tell two different stories, one of which is

22  blatantly contradicted by the record, so that no reasonable jury

23  could believe it, a court should not adopt that version of the

24  facts for purposes of ruling on a motion for summary judgment."

25  Scott v. Harris, 550 U.S. 372, 380 (2007).

26

27  **IV. DISCUSSION**

28      In its Motion, Union argues that there is no evidence that it

*United States District Court*
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1  ever agreed, either expressly or impliedly, to accept liability for

2  freight charges owed on any of the shipments at issue.  Mot. at 2.

3  It further argues that there is no evidence that it had any role in

4  billing Mitsui for inland trucking services or made any

5  representations to Mitsui about the charges for these shipments.

6  Id.  Union argues that it acted solely as a "releasing/receiving

7  agent" for Centurion with respect to every shipment at issue.  Id.

8  at 1.

9      In response, Mitsui argues that Union accepted the express

10 terms of the bills of lading, which provide that a consignee is

11 jointly liable for freight charges.  Alternatively, Mitsui argues

12 that Union impliedly agreed through its conduct to accept joint

13 responsibility for freight charges.  Mitsui further argues that

14 inconsistencies in the bills of lading submitted by Union show that

15 Union had knowledge that Mitsui was being charged for non-existent

16 trucking services and create a triable issue as to whether Union is

17 liable for misrepresentations as to the charges.

18     **A.    Breach of Contract Claim**

19         1.    Express Agreement to Pay Freight

20     To determine whether a consignee is contractually liable for

21 freight charges, courts first examine the bills of lading, which

22 "serve both as a receipt and as a contract."  States Marine Int'l,

23 Inc. v. Seattle-First Nat'l Bank, 524 F.2d 245, 248 (9th Cir. 1975)

24 (citation omitted).

25     Every bill of lading issued by Mitsui contained the following

26 terms:

27          In accepting this Bill of Lading the Merchant
             expressly accepts and agrees to all its terms
28          whether printed, stamped or written, or

1    otherwise incorporated, notwithstanding the
     non-signing of this Bill of Lading by the
2    Merchant.

3    Minck Decl. ¶ 9 Ex. H.

4        The term "Merchant" is defined to include: "the Shipper,

5    Holder of this Bill of Lading, Consignee, Receiver of the Goods,

6    any Person owning or entitled to the possession of the Goods or of

7    this Bill of Lading and anyone acting on behalf of such persons."

8    Id. § 1.  The bill of lading further provides that "[a]ll of the

9    Persons coming within the definition of Merchant . . . shall be

10   jointly and severally liable to [Mitsui] for the due fulfillment of

11   all obligations of the Merchant in this Bill of Lading," and "[t]he

12   Merchant shall be liable to [Mitsui] for the payment of all Freight

13   . . . ."  Id. §§ 10(1), 11(5).

14       The foregoing terms are routine in the industry.  Minck Decl.

15   ¶ 9.  Union accepted bills of lading containing these terms on

16   numerous, perhaps hundreds, of occasions, and there is no evidence

17   that Union ever objected to the terms.  Kam Decl. Exs. A-G; Minck

18   Decl. ¶ 11.  On the contrary, Union frequently paid the freight

19   charges.  Minck Decl. Exs. A-E (Mitsui records showing receipt of

20   payment for freight from Union); Kam Decl. ¶ 9 (Union "collected

21   payments from [Centurion's customers] to be passed on to Mitsui. .

22   . ").

23       Union argues that the "boilerplate" terms of the bills of

24   lading are insufficient to create liability on the part of a

25   consignee.  Mot. at 6.  As support, Union relies primarily on

26   Mitsui O.S.K. Lines, Ltd. v. Dynasea Corp., 72 Cal. App. 4th 208

27   (Cal. Ct. App. 1999).  In Dynasea, the court held that Mitsui could

28   not recover freight charges from a consignee despite terms to the

                                    7

1    contrary in the bills of lading.  The Court noted that "a party

2    cannot bind another to a contract simply by so reciting in a piece

3    of paper.  It is rudimentary contract law that the party to be

4    bound must first <u>accept</u> the obligation."  <u>Id.</u> (emphasis in

5    original).  The court found that there was no evidence that the

6    consignee accepted the bills of lading for the shipments at issue;

7    rather, the consignee declined to accept the shipments because the

8    cargo did not conform to its order.  <u>Id.</u>

9         Here, unlike in <u>Dynasea</u>, the evidence shows that Union

10   accepted the bills of lading at issue without ever objecting to

11   their terms and routinely paid the freight charges.  Viewed in the

12   light most favorable to Mitsui, this evidence is enough to create a

13   triable issue of fact as to whether Union accepted the terms of the

14   bills of lading and thereby assumed joint responsibility for

15   freight charges.

16              2.   <u>Implied Agreement to Pay Freight</u>

17        Additionally, there is enough evidence to create a triable

18   issue of fact as to whether Union impliedly agreed to be jointly

19   responsible for the freight charges.  Where a named consignee is

20   not the actual owner of the cargo, the consignee impliedly accepts

21   responsibility for freight charges if it exercises "dominion and

22   control over the shipment" and thereby gives rise to presumptive

23   ownership.  <u>States Marine Int'l, Inc. v. Seattle-First Nat'l Bank</u>,

24   524 F.2d 245, 248 (9th Cir. 1975).

25        Kam declares that, when cargo consigned to Union arrived,

26   Union "passed on information to [Centurion's] customers and

27   collected payments from them to be passed on to Mitsui and

28   [Centurion]."  Kam Decl. ¶ 9.  Mitsui argues that, from Kam's

**United States District Court**
For the Northern District of California

1  statement, it can reasonably be inferred that Mitsui accepted the

2  cargo as consignee and then released the cargo to or arranged for

3  forward delivery to Centurion's customers: "[w]hat the [Kam]

4  declaration does not explain is how cargo in [Mitsui's] custody

5  somehow came to be released to [Centurion's] customers -- unknown

6  to [Mitsui] -- even though Union was the Consignee entitled to take

7  delivery of the shipment per the [Mitsui bill of lading]."  Opp'n

8  at 8.  According to Mitsui, the simple explanation is that Mitsui

9  released the cargo to Union, who in turn exercised dominion and

10 control over it by releasing it to Centurion's customers.  Id.

11 Mitsui declares that this practice would be consistent with the

12 ordinary course of business.  Minck Decl. ¶ 7.  Viewing this

13 evidence in the light most favorable to Mitsui and drawing all

14 justifiable inferences in its favor, the Court finds that a triable

15 issue of fact exists as to whether Union accepted the cargo or

16 otherwise exercised dominion and control over the cargo consistent

17 with presumptive ownership.

18 Because triable issues exist as to whether Union is expressly

19 or impliedly liable for the alleged unpaid freight charges,

20 Union's Motion is DENIED with regard to Mitsui's first claim for

21 breach of contract.

22 **B.   Claim for Accounting**

23 Union argues that it is entitled to summary judgment on

24 Mitsui's claim for accounting because Mitsui has not produced any

25 evidence that there is a balance due from Union, which is an

26 essential element of a claim for accounting.  Reply at 5 (citing

27 County of Santa Clara v. Astra USA, Inc., 401 F. Supp. 2d 1022,

28 1026 (N.D. Cal. 2005)).  In its Opposition, Mitsui does not

9

United States District Court
For the Northern District of California

1   indicate what evidence, if any, it offers in support of its claim

2   for accounting against Union.  However, Mitsui argues in general,

3   but not with specific regard to its claim for accounting, that it

4   should be allowed to engage in discovery before its claims are

5   summarily adjudicated.  Opp'n at 9.

6       Under Federal Rule of Civil Procedure 56(d)(1), "[i]f a

7   nonmovant shows by affidavit or declaration that, for specified

8   reasons, it cannot present facts essential to justify its

9   opposition," then the Court may defer ruling on the motion.  The

10  Ninth Circuit has made clear that Rule 56(d) requires the nonmovant

11  to state "what information is sought and how it would preclude

12  summary judgment."  <u>Margolis v. Ryan</u>, 140 F.3d 850, 853 (9th Cir.

13  1998).[5]

14      Here, in an attempt to comply with Rule 56(d), Mitsui filed a

15  declaration stating that it cannot present facts essential to its

16  Opposition because no discovery at all has taken place.  Cicala

17  Decl.[6]  The declaration sets forth a list of information Mitsui

18  hopes to obtain through discovery, but none of the information

19  appears to pertain to Mitsui's accounting claim against Union, and

20  Mitsui does not explain how the information it seeks would preclude

21

22  [5] At the time <u>Margolis</u> was issued, Rule 56(d) was listed as Rule
    56(f). However, as the Advisory Committee Notes to the 2010
23  Amendments to Rule 56 note, "Subdivision (d) carries forward
    without substantial change the provisions of former subdivision
24  (f). A party who seeks relief under subdivision (d) may seek an
    order deferring the time to respond to the summary-judgment
25  motion."

26  [6] Conte C. Cicala ("Cicala"), attorney for Plaintiff, filed a
    declaration regarding the need for additional discovery.  ECF No.
27  53.  Union then filed an objection to the Cicala declaration,
    arguing that it was filed in violation of Civil Local Rule 7-3(d),
28  which limits the papers that parties may file once a reply has been
    submitted.  ECF No. 54.  The Court OVERRULES Union's objection.

**United States District Court**
For the Northern District of California

1  summary judgment as to this claim.

2      In light of the fact that absolutely no meaningful discovery

3  has taken place between Union and Mitsui, the Court DEFERS ruling

4  on Union's Motion with regard to Plaintiff's accounting claim and

5  gives Plaintiff the opportunity to cure the deficiency in its

6  declaration.  The Court grants Plaintiff fifteen (15) days leave to

7  file an amended declaration in compliance with Rule 56(d) stating

8  whether it intends to seek discovery with regard to its claim for

9  accounting against Union, and if so, what information it seeks and

10 how that information would preclude summary judgment as to the

11 accounting claim against Union.  If Plaintiff chooses to file such

12 a declaration, the Court will take it under consideration in

13 deciding whether summary judgment is appropriate as to Plaintiff's

14 accounting claim against Union.[7]  If Plaintiff chooses not to file

15 such a declaration, then the Court will grant summary judgment in

16 favor of Union as to Plaintiff's claim for accounting.

17     **C.    Claims for Misrepresentation**

18     Mitsui alleges that Defendants misrepresented that many

19 shipments had to be picked up from inland points of origin when in

20 fact their customers delivered the cargo to the ports of departure.

21 Thus, Mitsui contends it was forced to pay for trucking services

22 that were never rendered.  SAC ¶¶ 13-16.

23 _____

24 [7] In response to Plaintiff's original Rule 56(d) declaration, Union
   submitted a brief containing a response and objections to the
25 declaration.  ECF No. 54.  Plaintiff then submitted a response to
   Union's response.  ECF 56.  Union then filed a reply to Plaintiff's
26 response.  ECF No. 58.  The parties are hereby notified that, if
   Plaintiff chooses to file an amended declaration as discussed
27 above, the Court will not entertain any additional filings
   pertaining to said declaration or to the issue of whether the Court
28 should refrain from granting Union's motion pending the outcome of
   discovery.

1    Union argues summary judgment should be granted on these

2 claims because Mitsui presents no evidence that Union made any

3 representations at all concerning the alleged improper freight

4 charges.  Reply at 6.  Mitsui contends that the bills of lading

5 submitted by Union constitute evidence that Union was "well aware"

6 of the improper billing practice.  Union submitted bills of lading

7 for seven shipments.  <u>See</u> Kam Decl. Exs. A-G.  For each shipment,

8 it submitted two bills of lading -- one "master" bill of lading

9 issued by Mitsui and one "house" bill of lading issued by

10 Centurion.  <u>Id.</u>  In each case, Mitsui's master bill of lading

11 indicates the "Place of receipt" for the shipment as "Shenzen -

12 Door" and further indicates that "inld orgn" (inland origin,

13 according to Mitsui) constituted a portion of the carriage.  <u>Id.</u>

14 By contrast, each of Centurion's house bills of lading indicates

15 that the place of receipt was the port of departure -- either Hong

16 Kong or Yantian.  <u>Id.</u>

17    The elements of a cause of action for misrepresentation under

18 California law are: "1) a misrepresentation (false representation,

19 concealment, or nondisclosure); 2) knowledge of falsity (or

20 scienter); 3) intent to defraud, i.e., to induce reliance; 4)

21 justifiable reliance; and 5) resulting damage." <u>Robinson</u>

22 <u>Helicopter Co., Inc. v. Dana Corp.</u>, 34 Cal. 4th 979, 990 (2004).

23    While Union is correct that Mitsui presents no evidence of an

24 affirmative representation made by Union, concealment and

25 nondisclosure also qualify as misrepresentations under California

26 law.  Kam declares that Union "collected the amounts owed by the

27 actual consignees and passed along the freight charges collected to

28 Mitsui (per the Centurion invoice) and Centurion."  Kam Decl. ¶ 4.

Viewed in the light most favorable to Mitsui, and making all justifiable inferences in its favor, the evidence creates a genuine issue of fact as to whether Union knew about the trucking charges and, when "pass[ing] along the freight charges" to Mitsui, concealed from Mitsui that the freight charges paid reflected non-existent trucking charges.

Accordingly, the Court DENIES Union's Motion with regard to Mitsui's misrepresentation claims.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

**United States District Court**
For the Northern District of California

## V. **CONCLUSION**

For the foregoing reasons, the Court DENIES the Motion for Summary Judgment filed by Defendant Union Logistics, Inc. against Plaintiff Mitsui O.S.K. Lines, LTD with regard to Plaintiff's claims for breach of contract, intentional misrepresentation, and negligent misrepresentation.

The Court DEFERS ruling on the Motion with regard to Plaintiff's claim for accounting and grants Plaintiff fifteen (15) days leave to file an amended declaration in compliance with Rule 56(d) stating whether it intends to seek discovery with regard to its claim for accounting against Union, and if so, what information it seeks and how that information would preclude summary judgment as to the accounting claim against Union.  If Plaintiff does not timely file such a declaration, then the Court will grant summary judgment in favor of Union as to Plaintiff's claim for accounting.


IT IS SO ORDERED.


Dated: November 21, 2011

UNITED STATES DISTRICT JUDGE